Fleming,
one of the judges of the general court. The exceptions to the indictment which weighed most with me, were those relating to the description of the houses; but.the answer given to them, by the other judges, is satisfactory; and I concur in it, as no inconvenience can arise from it; for the judges will always take care, upon the trial, to direct the jury to acquit the prisoner, if the house burnt was not the subject of arson. The rest of the exceptions are unimportant ; and therefore I think the indictment is sufficient.
' Upon the question of clergy, I had more difficulty. For it is not clear to me that the statute of the 23 Hen. 8, was revived, either by that of the 6 Ed. 6, or by the parliamentary construction, as it has been called, in the 4 and 5 Ph. & M: and, if it were res integra, I should probably not so determine. But the decision, in Powlter’s case, has been so *120 uniformly considered as the true construction of the statutes, that it has become the law of the land; for precedents, so acquiesced in, cannot be overturned, without more dan- . . , . T iger than benefit, as no point will ever be settled. 1 concur, therefore, that the prisoner is ousted of clergy.
Lyons, one of the judges of the general court. None of the exceptions to the indictment had any weight with me, except those relating to the description of the houses; but I am now satisfied that it was not necessary to describe them as dwelling houses; for house, in its highest sense, means a dwelling house; and common gaol and county prison, mean the house provided by the county, under the act of assembly, for the custody of persons committed by legal process. No danger arises to the prisoner from the general description; because it is the duty of the judges upon the trial to direct, him to be acquitted by the jury, if the house proved is not one upon which arson could be committed.
The point relative to clergy was settled, in Powlter’s case, upwards of two hundred years ago; and that resolution ought not now to be shaken; for the solemn decisions of the judges upon a statute become part of the statute, 1 Burr. 419; and the security of men’s lives and property, require they should be adhered to : for precedents serve to reguíate our conduct; and there is more danger to be apprehended from uncertainty, than from any exposition; because, when the rule is settled, men know how to conform to it; but, when all is uncertain, they are left in the dark, and con’stantly liable to error; for the same offence which, at one /time, was thought entitled to clergy, at another, may be deemed capital; and thus the life or death of the citizen will he made to depend, not upon a fixt rule, but upon the opinion of the judge, who may happen to try him, than which a more miserable state of things cannot be conceived. 1 Vern. 18. 3 Burr. 1730, per Wilmot, J. The authority of Powlter’s case, therefore, is conclusive; and, consequently, I am of opinion, that the prisoner is mot entitled to clergy.
*121 Carrington, chief justice of the general court. The case has been so fully discussed by the judges who preceded me, that I shall not detain the court by delivering the reasons for ray opinion; but shall merely observe, that I think the indictment is sufficient; that the offences charged in it amount to arson; and that the prisoner is not entitled to the benefit of clergy.
Blair, one of the judges of the high court of chancery. I lay no stress upon any of the exceptions to the indictment, except that which relates to the description of Clayton’s house: which I strongly incline to think ought to have been laid as a dwelling house; for I am not satisfied with the reasoning made use of to shew that house, ex vi termini, means a dwelling house ; and lord Coke’s opinion is, that the purpose to which the house is applied, ought to be stated in the indictment, as dwelling house, barn, Sec. 3 Inst. 67. But it was said, that it might be called house in the indictment; and, if, upon the trial, the house proved was not one upon which arson could be committed, the judges might direct the jury to acquit the prisoner; and so they might, if it were not stated to have been maliciously done : but nobody, will contend that the indictment would be good, without alledging the malice. Prison, however, is a dwelling house, kept by law for the abode of persons confined under legal process; and, therefore, it was sufficient to call it by that name. Which sustains the indictment, whether the other house was sufficiently described or not.
The next question is, whether the prisoner is entitled to the benefit of clergy ? All that the statute of the 6 Ed. 6, intended, was to make provision for the case of particular fugitives from justice; and the word offences relates only to such offences as those fugitives should commit. Let it be, however, that it went further, and revived the statute of the 25 Hen. 8, still arson would not be embraced, unless that of the 23 Hen. 8, was revived also. Which, at most, can only be done by implication; and, to that species of argument, I *122 . can never assent in a criminal case. The inference drawn from the statute of the 4 and 5 Ph. & M., stands upon no better footing; for an expressparliamentary declaration that it had been revived, contrary to the fact, ought not to be regarcjec|. ancj mucb ]ess a constructive one. Nor is the argument, that the statutes were a system of laws, of more weight; for that supposes them all to be in existence, which was the thing to be proved. Therefore, if it were a new case, I should be at no loss to decide in favour of the prisoner. But the decision in Powlter’s case, has prevailed so long, that it must be submitted to; and the authority of it, for the reasons mentioned by judge Lyons, cannot now be shaken. The consequence is, that the benefit of clergy must be denied. , _
Wythe, one of the judges of the high court of chancery — Dissented-from'the majority of the court upon the point of clergy; but said it would b^ tedious and unnecessary to state his reasons for it.
Pendleton, President, as well of the high court of chancery as of the court of appeals. The indictment is an indictment at common law; and none of the exceptions to it are of any weight, except the first; which consists of two branches, namely, that the house is not stated to be the property of Clayton; and that it is not called his dwelling house. The first is entirely groundless; for the words, “ house of William Clayton,” mean that it belongs to him: and the second is not much better founded. Dwelling house is a complex term, and scarcely more certain than house; for it is not confined to any particular room in the building, nor even to the same room, but it extends to all the houses belonging to the curtilage; and therefore the difficulty is as great under one description as the other. But do the authorities require that it should be called a dwelling house ? The Mirror is not very precise upon the subject; and lord Co/ce is rendered equally obscure by the addition of his *123 videlicet; which leaves it not very clear, whether he was describing the offence itself, or the form of the indictment. Hale and Hawkins, however, both drop the word dwelling, using house only; and that practice is followed in the Crown Circuit Companion, without ever having been questioned; which puts an end to the difficulty as to the house of Clayton. And the description of the prison is clearer still; for that word, ex vi termini, imports a dwelling house; because it is the abode of the unfortunate men confined there; and the burning it, over their heads, is the more aggravated of-fence of the two, as confinement is no part of the punishment, but is intended to prevent their escape from justice; and they ought not to receive less> protection, when in the custody of the law, than if th¿^^arej|i^bajft^wn houses. I think, therefore, that the gln^faescri^l^nV house, is sufficient; especially as it the^u^es, upon the trial of the cause, to insp’uct the of house should be proved; and, if watfe|Tjf^s^not onejbpon which arson can be committed, to wj^gct them*f<A¿icjfuit the prisoner. ^
The point, relative to the benefit of clergy, was determined two hundred years ago; and appears, to me, to have been properly decided. A short review of the statutes upon the subject will prove this. That of the 23 Hen. 8, took clergy from those only, who were convicted by verdict; but the 25 Hen. 8, extended it to outlaws, mut.es and fugitives. This, however, was altered, probably through mistake, by statute 1 Ed. G; which restored clergy to arson: but the latter was, in effect, repealed, and the 23 and 25 Hen. 8, revived by the 5 and 6 Ed. 6: which, reciting the 25 Hen. 8 and 1 Ed. 6, and taking notice of a particular kind of fugitives, adds that “ all and every article, clause and sentence, contained in the same, touching clergy, shall, touching such offence, stand in full strength and virtue.” The words, touching such offenders, in the preceding member of the sentence, related to the fugitives; but the words, such of-fences, in this, must have relation to the offences generally *124 enumerated, in the recital contained in the statute; and takes clergy from them, as being within the same mischief. This construction gives full effect to all the words in the statute; but, without it, the words, “ article, clause and sentence,” would be superfluous. The parliamentary construction in the 4 and 5 Ph. & M., is agreeable to that view of the subject; and strengthens the precedent of Powlter’s case: which I am unwilling to disturb for the reasons given by judge Lyons. So far from it, that, if 1 had any doubts upon the construction myself, I should, most cordially, unite with the judges who consider themselves bound by that decision.
I am therefore of opinion, that the exception^ to the indictment are groundless; and that the law is, that benefit of clergy is taken from the prisoner.
The certificate to the general court was, that the errors filed in arrest of judgment were insufficient; and that the prisoner was not entitled to the benefit of clergy.
Note. No cause decided, since the revolution, is more im- . portant than this, as it fixes, by the opinion of a large majority of the judges, distinguished for their patriotism, independence and ability, a principle necessary for the tranquillity of society, and the safety of the general transactions of mankind, namely, that a settled construction of a statute, forms a precedent, which should be adhered to as part of the law itself; and ought, upon no criticism of words, to be departed from. Accordingly, the decisions of the court, since that period, abound with instances of the same kind ; but none of them state the ground and reason of it, with so much force, as the following remarks of ex-president Madison; which are so lucid and convincing, that the reporter hopes he will be excused for inserting them here:
“ The charge of inconsistency between my objection to the constitutionality of such a bank in 1791, and my assent in 1817, turns on the question, how far legislative prece *125 dents, expounding the constitution, ought to guide succeeding legislatures, and to overrule individual opinions.
“ Some obscurity has been thrown over the question, by confounding it with the respect due from one legislature to laws passed by preceding legislatures. But the two cases are essentially different. A constitution being derived from a superior authority, is to be expounded and obeyed, not controlled or varied by the subordinate authority of a legislature. A law, on the other hand, resting on no higher authority than that possessed by every successive legislature, its expediency, as well as its meaning, is within the scope of the latter.
“ The case in question has its true analogy in the obligation arising from judicial expositions of the law on succeeding judges; the constitution being a law to the legislator, as the law is a rule of decision to the judge.
“ And why are judicial precedents, when formed on due discussion, and consideration, and deliberately sanctioned by' reviews and repetitions, regarded as of binding influence, or rather of authoritative force, in settling the meaning of a law? It must be answered $ 1st, because it is a reasonable and established axiom, that the good • of society requires that the rules of conduct of its members should be certain and known, which would not be the case if any judge, disregarding the decisions of his predecessors, should vary the rule of law according to his individual interpretation of it. Misc.a est servitus, ubi jus est aut vagum aut incognitum. 2d, because an exposition of the law publicly made, and repeatedly confirmed by the constituted authority, carries with it, by fair inference, the sanction of those who, having made the law through their legislative organ, appear under such circumstances to have determined its meaning through their judiciary organ.
“ Can it be of less consequence that the meaning of a constitution should be fixed and known, than that the meaning of a law should be so? Can indeed a law be fixed in its meaning and operation, unless the constitution be so ? *126 On the contrary, if a particular legislature, differing m the . . . . construction of the constitution, from a series of preceding constructions, proceed to act on that difference, they not only introduce uncertainty and instability m the constitution, but in the laws themselves; inasmuch as all laws preceding the new construction, and inconsistent with it, are not only annulled for the future, hut virtually pronounced nullities from the beginning.
“ But it is said that the legislator having sworn to support the constitution, must support it in his own construction of it, however different from that put on it by his predecessors, or whatever be the consequences of the construction. And is not the judge under the same oath to support the law ? yet has it ever been supposed that he was required, or at liberty to disregard all precedents, however solemnly repeated and regularly observed; and by giving effect to his own abstract and individual opinions, to disturb the established course of practice in the business of the community? Has the wisest and most conscientious judge ever scrupled to acquiesce in decisions in which he has been overruled by the matured opinions of a majority of his colleagues; and subsequently to conform himself thereto, as to authoritative expositions of the law ? And is it not reasonable that the same view of the official oath should be taken by a legislator, acting under the constitution, which is his guide, as is taken by a judge, acting under the law,-which is his ? '
“ There is in fact and in common understanding, a necessity of regarding a course of practice, as above characterized, in the light of a legal rule of interpreting a law: and there is a like necessity of considering it a constitutional rulé of interpreting a constitution.
“ That there may be extraordinary and peculiar circumstances controlling the rule in both cases, may be admitted; but with such exceptions, the rule will force itself on the practical judgment of the most ardent theorist. He will find it impossible to adhere to, and to act officially upon, *127 his solitary opinions as to the meaning of the law or constitution, in opposition to a construction reduced to practice, during a reasonable period of time; more especially where no prospect éxisted of a change of construction by the public or its agents. And if a reasonable period of time, marked with the usual sanctions, would not bar the individual prerogative, there could be no limitation to its exercise, although the danger of error must increase with the increasing oblivion of explanatory circumstances, and with the continual changes in the import of words and phrases.”
[Letter of Mr. Madison to C. J. Ingersoll, June 25, 1831.